Harlan E. McGregor and Madeline Q. McGregor v. Commissioner.
McGregor v. Commissioner
Docket No. 52277.
United States Tax Court
T.C. Memo 1955-223; 1955 Tax Ct. Memo LEXIS 116; 14 T.C.M. (CCH) 897; T.C.M. (RIA) 55223; August 9, 1955
*116 Petitioner Harlan E. McGregor, on January 19, 1950, purchased a farm in Maryland. There was included in the purchase 218 acres of land, certain improvements, equipment, and the landlord's interest in some tobacco, corn, wheat, and soybeans which were harvested in 1949 and which were still stored on the premises. The total purchase price of $14,206.55 was not allocated by the buyer and the seller between the several items included in the sale. The petitioner and the Commissioner differ on the proper allocation which is to be made. Under the evidence, the Court finds the allocation which should be made. Held, depreciation on the depreciable property should be computed on the allocated cost found in the allocation. The remaining useful life of the depreciable assets is as determined in the deficiency notice. Held, further, petitioner had no gain or loss on the sale in the taxable year of the prior year's crops stored on the farm. As to this adjustment the Commissioner is sustained. Harlan E. McGregor, Avondale Farm, Newburg, Md., pro se. A Russell Beazley, Jr., Esq., for the respondent. BLACK
Memorandum Findings of Fact and Opinion The Commissioner has determined *117 a deficiency in petitioners' income tax for the year 1950 of $132.08. The deficiency is due to the following adjustments made by the Commissioner: (a) Depreciation disallowed
$427.45
(b) Loss on sale of crops disallowed
273.47
(c) Interest disallowed
31.97
$732.89
Petitioners do not contest adjustment (c). They do contest adjustments (a) and (b). Adjustment (a) is explained in the deficiency notice as follows: "On the basis of appraisals made in connection with the first and second mortgages on the property purchased on January 19, 1950, it is held that the cost of Avondale Farm, amounting to $14,206.55, should be allocated as follows: "Land
$ 9,047.92
Improvements
3,670.55
Equipment
600.00
Produce
888.08
Total
$14,206.55
"(a) In accordance with the reallocation of cost, as shown above, depreciation on improvements and equipment has been decreased from the amount of $1,270.00, shown on your return, to the amount of $842.55, computed as shown in the attached Schedule A." Adjustment (b) is described in the deficiency notice as follows: "(b) The amount of $273.47, deducted as a net loss on the sale of tobacco, corn and wheat and *118 soybeans, which were purchased with the farm, is disallowed for the reason that no evidence has been submitted showing that the cost of these items exceeded the selling price of $888.08." To adjustments (a) and (b) petitioners assign errors as follows: (a) The Commissioner erred in the determination of the cost of the various improvements for income tax purposes. (b) The Commissioner erred in the determination of the cost of the land. (c) The Commissioner erred in the determination of the cost of the crops purchased with the farm. (d) The Commissioner erred in the determination of the depreciation expense on the improvements. (e) The Commissioner erred in the determination of the depreciation expense of the equipment purchased with the farm. (f) The Commissioner erred in the determination of the depreciation expense for the trailer. Thus it will be seen from the foregoing statements that we have two issues to decide. These issues are: (1) What depreciation should petitioners be allowed on farm improvements, equipment and trailer for the taxable year, and (2) what loss, if any, should petitioners be allowed on the sale of farm products which they purchased with the farm. *119 Findings of Fact The petitioners are husband and wife residing on a farm near Newburg, Charles County, Maryland. They filed a joint income tax return for the year 1950 with the Collector of Internal Revenue, Baltimore, Maryland. Petitioner Harlan E. McGregor will sometimes hereinafter be referred to as petitioner. Facts with Reference to the Depreciation Issue On January 19, 1950, petitioner purchased a farm located in Charles County, Maryland, for $14,206.55. In the purchase there were included 218 acres of land, improvements, certain farm equipment, and some crops which had been grown on the farm the year before and were still in storage on the premises. The tenant owned one-half of these crops which were in storage and the landlord owned the other one-half. The landlord sold his one-half of the stored crops when he sold the farm to petitioner. The purchase price of the several items included in the purchase, which petitioner paid, was not separately stated but was included in the $14,206.55 which petitioner paid in a lump sum. The improvements on the farm when purchased were a 7-room tenant house which had no electricity, plumbing or running water, was in need of repair *120 and had some termite damage; two very good tobacco barns; a general purpose barn; and some additional buildings, fences and wells. The equipment purchased with the farm included a power saw and attachments, tobacco sticks, canvas cloth, cement mixer, shovels, rakes, hoes, blockmaker, scoop, and wheelbarrow. The harvested crops purchased with the farm consisted of tobacco, corn, wheat, and soybeans. The petitioner, in his petition, claimed that the purchase price of the farm should be allocated as follows: Land
$ 3,000.00
Improvements
9,100.00
Crops purchased for resale
1,161.55
Equipment
950.00
Total
$14,211.55
Petitioner, in his return, claimed deductions for depreciation as follows: Cost
Depreciation
or other
allowable
Kind of property
basis
this year
Wood-frame tobacco barns
$6,200.00
$ 412.00
Wood-frame chicken house
150.00
50.00
Graincrib (wood)
300.00
20.00
Graincrib (wood)
50.00
50.00
Tenant house (wood)
2,100.00
350.00
Tractor (Ford)
750.00
90.00
Plow, disc, cultivator
750.00
45.00
Misc. equipment
420.16
158.00
Trailer
65.00
15.00
Chevrolet (1-8-47)
250.00
25.00
Ford
1,765.00
20.00
Fence
100.00
20.00
Wells
200.00
10.00
$1,270.00 *
*121 The date of the acquirement of each item of the above-listed property is given in the table from which the above figures are taken and the estimated remaining life of each item of property from the beginning of the taxable year is also given. The Commissioner in his determination of the deficiency has allocated the purchase price of $14,206.55 between the land, improvements, farm equipment, and crops in storage and states in his deficiency notice as follows: "On the basis of appraisals made in connection with the first and second mortgages on the property purchased on January 19, 1950, it is held that the cost of Avondale Farm, amounting to $14,206.55, should be allocated as follows: "Land
$ 9,047.92
Improvements
3,670.55
Equipment
600.00
Produce
888.08
Total
$14,206.55"
The Commissioner in his notice of deficiency computed depreciation on improvements and equipment as follows: Cost
Life
Depreciation
Tenant house (1)
$ 748.81
6 years
$114.40
Tenant house (2)
748.81
8 years
85.80
Additions (2)
346.46
8 years
28.87
Storage stripping building
98.77
5 years
18.10
Tobacco barn (1)
564.40
15 years
34.49
Tobacco barn (2)
564.40
15 years
34.49
Tobacco barn (3)
705.50
15 years
43.11
Grain crib (1)
70.55
15 years
4.31
Grain crib (2)
14.11
1 year
12.93
Chicken house
70.55
3 years
21.56
Fence
28.22
5 years
5.17
Wells
56.44
20 years
2.59
Miscellaneous Equipment
Power saw and attachment
250.00
5 years
45.83
Tobacco sticks, canvas cloth, etc.
100.00
5 years
18.33
Cement mixer
50.00
5 years
9.17
Shovels, rakes, hoes
100.00
5 years
18.33
Block maker
50.00
5 years
9.17
Scoop
30.00
5 years
5.50
Wheelbarrow
20.00
5 years
3.66
Pump
70.16
5 years
5.85
Trailer
65.00
4 years
14.89
Plow, disc, cultivator
750.00
10 years
50.00
Tractor
750.00
5 years
100.00
Chevrolet
1,250.00
2 years
134.56
Ford
1,845.95
5 years
21.44
Total depreciation
$842.55
*122 The last six items listed above were acquired by petitioner after he purchased the farm. The first seven items were purchased by petitioner with the farm and comprise the equipment to which respondent has allocated $600 of the total purchase price of $14,206.55. There is also a column in the Commissioner's schedule of depreciation from which the above figures are taken which shows the date when each item of property was acquired but inasmuch as there seems to be no dispute between the parties as to the dates of acquirement of the property, that column has been omitted from the above. Ultimate Findings of Fact The purchase price of $14,206.55 which petitioner paid on January 19, 1950, for land, improvements, equipment, and crops stored on the premises should be allocated as follows: Land
$ 5,218.47
Improvements
7,500.00
Equipment
600.00
Stored crops (petitioner's one-half)
888.08
Total
$14,206.55
[1] The $7,500 which we have allocated to improvements generally should be further allocated among the several items of improvements, as follows: Cost Basis
as Adjusted
Life
Tenant house (1)
$1,922.19
6 years
Storage stripping bldg.
253.54
5 years
Tobacco barn (1)
1,448.83
15 years
Tobacco barn (2)
1,448.83
15 years
Tobacco barn (3)
1,811.04
15 years
Grain crib (1)
181.18
15 years
Grain crib (2)
36.01
1 year
Chicken house
181.18
3 years
Fence
72.35
5 years
Wells
144.85
20 years
Total
$7,500.00
*123 No reallocation of the equipment items is necessary because we have approved the allocation which respondent has made to equipment. [2] The remaining useful life of the equipment is as the respondent has determined in his deficiency notice. Facts with Reference to the Loss Issue The cost to the petitioner of the tobacco, corn, wheat, and soybeans purchased with the farm was $888.08. The tobacco, corn, *124 wheat, and soybeans purchased with the farm were sold by the petitioner a few months after the purchase for the amount of $888.08. The petitioner had neither gain nor loss in the sale of these farm products. Opinion BLACK, Judge: The issues which we have here to decide are issues of fact and depend upon the proper allocation of the purchase price of the farm between land, improvements, equipment, and crops raised on the premises the year before and which were still stored on the premises when petitioner purchased the farm. Where one lump-sum consideration is paid for a conglomeration of assets the cost of each asset must be determined by proportioning the purchase price among the assets on the basis of their relative fair market value at the time of acquisition. . In this Johnson Lumber Corporation case we said, among other things, as follows: "and if the total consideration is paid for a mixed aggregate of assets, its allocation among the several properties acquired should be based upon the relative value of each item to the value of the whole. [Citing authorities.]" The petitioner, in his brief, summarizes his *125 claim for depreciation as follows: Items
Depreciation
Expense
Improvements
$ 840.88
Equipment
Items purchased with farm
150.00
Other equipment
162.00
Automobiles (Notice of Defi-
ciency, Schedule A)
Chevrolet (1946)
$134.56
Ford (1950)
21.44
156.00
Total
$1,308.88 It will be noted that petitioner's claim in his brief for depreciation allowance for the taxable year exceeds the $1,265 claimed on his return by $43.88. The petitioner, in his brief, lays considerable stress on the fact that when he purchased the land, improvements, equipment, and produce for a total consideration of $14,206.55, he himself made a mental classification, after careful consideration, of what he was paying for each and this classification was reasonable. The fact remains, however, that petitioner purchased the conglomeration of assets for a total sum without any agreement with the seller as to what he was paying for each. Therefore, the Court is confronted with the necessity of making an allocation of these costs according to fair market value. In making such allocation the Court has given due consideration to petitioner's testimony as to the fair market value of *126 each at the time of purchase. In our Findings of Fact we have shown the allocation which petitioner claimed on the joint return filed by him and his wife. In these findings we have also shown the allocation which respondent made in his determination of the deficiency. There are considerable differences in the two allocations. Petitioner testified at length in support of the allocations which he made on the joint return. The respondent relies chiefly for support of the allocations which he made in the deficiency notice upon the testimony of his witness, J.A.P. Saunders. Saunders is an experienced and competent appraiser and appraised the farm for the United States Veterans Administration a short time before petitioner purchased it. In his appraisal he appraised the 218 acres of land at $10,000 and the buildings and improvements at $4,000. He made no appraisal of the value of the equipment on the farm and made none of the crops on the place in 1949 that had been harvested and were still in storage on the farm. After a careful review of all the evidence, we are convinced that the Commissioner has allocated too much to the land and too little to the improvements. These improvements *127 were of very considerable value. On the other hand, we are convinced that the allocations which petitioner made in the joint return which was filed, and for which he still contends, were too low for the land and too high for the improvements, equipment and stored crops. After a study of the problem, we have made in our Findings of Fact our own allocations. They represent our best judgment when all the evidence is considered. It will be seen in our findings that we attribute less value to the land and more value to the improvements than respondent has used in his determination, and more value to the land and less value to the improvements than petitioner has used on the joint return. We have not disturbed the values which respondent has attributed to the equipment and to the stored crops in his determination of the deficiency. We do not think the petitioner has overcome by evidence the presumptive correctness of the Commissioner's determination in the deficiency notice as to these items. It follows from our Findings of Fact and what we have said above that in a recomputation under Rule 50 petitioner will be entitled to a larger deduction for depreciation on the improvements than *128 the Commissioner has allowed in his determination of the deficiency. The remaining useful life of these improvements is as used by respondent in his determination of the deficiency. Petitioner has not proved any error in respondent's determination of the remaining useful life of the improvements. Inasmuch as we have made no change in respondent's determination of the cost of the equipment nor any change in the remaining useful life of the equipment from that used by respondent in his determination of the deficiency, respondent's computation of depreciation on equipment will remain undisturbed. By this we mean that we approve his computation of depreciation on "Miscellaneous Equipment" as shown in Schedule A attached to the deficiency notice. Now as to respondent's disallowance of petitioner's claimed loss of $273.47 on the sale of crops, we do not think petitioner has proved any error in that determination. The evidence shows that petitioner sold these crops a few months after they were purchased for $888.08. We think petitioner has failed to show these farm products had any greater cost basis to petitioner than the $888.08 for which they were sold. Hence petitioner suffered no gain *129 or loss in their sale. The Commissioner is sustained in this adjustment. Decision will be entered under Rule 50. Footnotes
*. The correct figure is $1,265.00.↩
1. Pursuant to Offical Order of the Tax Court, dated December 9, 1955, and signed by Judge Black, this sentence was substituted for the following: "In a Rule 50 computation the $7,500 which we have allocated to improvements should be distributed among the several items which respondent has listed as improvements in Schedule A, Depreciation, which accompanies his deficiency notice and the increase which will result in the cost of each of the items of improvements listed should be ratably made."↩
2. This sentence was originally preceded by the following sentence, which was stricken by Official Order of the Tax Court, dated December 9, 1955, and signed by Judge Black: "The remaining useful life of the improvements is as respondent has determined in his deficiency notice."↩